

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

ALB:CPK:BTR  
F. #2018R00974

*610 Federal Plaza*
*Central Islip, New York 11722*

June 20, 2019

<u>Filed Under Seal</u>

The Honorable Joan M. Azrack  
United States District Judge  
United States District Court  
920 Federal Plaza  
Central Islip, New York 11722

   Re: United States v. Mahmoud Ali Barakat  
     <u>Criminal Docket No. 18-892 (S-1) (JMA)</u>

Dear Judge Azrack:

   The government respectfully submits this letter in response to the letter of May 31, 2019 by Defendant Mahmoud Ali Barakat's ("defendant") retained co-counsel Kevin Keating ("Keating") regarding the conflict of interest between defendant and his original retained attorney, Robert Feitel ("Feitel"). The conflict arises from the fact that Feitel will likely be a witness in the prosecution of the defendant and others for obstruction of justice and conspiracy to obstruct justice. The government advises the Court of this information pursuant to its obligation under Second Circuit law, so the Court may conduct the appropriate inquiry pursuant to <u>United States v. Curcio</u>, 680 F.2d 881, 888-90 (2d Cir. 1982). <u>See</u>, <u>e.g.</u>, <u>United States v. Stantini</u>, 85 F.3d 9, 13 (2d Cir. 1996); <u>United States v. Malpiedi</u>, 62 F.3d 465, 467 (2d Cir. 1995).

   As set forth herein, the government respectfully requests that, at the Curcio Hearing on July 16, 2019, the Court conduct the appropriate <u>Curcio</u> inquiry regarding Feitel's potential conflicts of interest, the defendant's right to conflict-free representation and determine if a waiver by the defendant is sufficient to protect those rights.

BACKGROUND

   On or about March 27, 2019, the defendant was charged in a superseding indictment with, <u>inter alia</u>, one count of conspiracy to obstruct justice, in violation of 18 U.S.C. § 1512(k), and one count of obstruction of justice, in violation of 18 U.S.C. § 1512(c)(1). The charges stem from a series of incidents in which the defendant, while in custody, arranged to have his co-conspirators prepare an altered document which was then filed by Feitel in support of the defendant's bail application in this case. The defendant was arrested in Paraguay at the request of the United States of America based on the underlying indictment in this case. The newly added co-defendants, Khwaja and Mendoza, learned of the defendant's arrest that day

and learned that the arrest was based on charges pending in the United States. Subsequently, the defendant, from custody, requested that Khwaja send him an account statement that would show that they had no "shady business." Khwaja knew that the defendant had the actual unaltered document and understood that a real account statement would not suffice. Khwaja created an altered account statement (the "Altered Statement") which deleted any reference to multiple bulk cash payments from the defendant. Mendoza and Khwaja agreed to this improper procedure. Subsequently, the Altered Statement was used by Feitel in an attempt to obtain bail for the defendant. This is the core of the obstruction of justice charge in the superseding indictment. Feitel has personal knowledge as to how, where, from whom and under what circumstances he obtained the Altered Statement.

At trial, the government expects to prove that the defendant sent, or caused another to send, the Altered Statement to Feitel to use in the defendant's bail proceeding. Feitel is a witness because he has personal knowledge of how he obtained the Altered Statement to use in the bail proceeding and what he was told about it by the defendant. Feitel's testimony is necessary to prove this evidentiary link.[1]

How the Altered Statement made its way to Feitel when the defendant was in custody and what Feitel was told about the document is evidence only Feitel can provide. The Altered Statement was the only document attached to the defendant's bail application by Feitel and Feitel made arguments for the defendant's release based on the document.[2]

As the government told Feitel in a conversation memorialized in Feitel's attached e-mail, the government does not contend that Feitel acted with bad motive or intent in submitting the Altered Statement to the Court. However, Feitel had the actual unaltered document, provided in discovery, as well as statements of accounts for months before the bail hearing on February 7, 2019. These documents had been obtained by the government in response to an email search warrant issued on December 14, 2017, and the unaltered statement of account was specifically highlighted by the government in discovery for

---

[1] To the extent that a showing of probable cause is required to invoke the crime-fraud exception, see, e.g., In re Grand Jury Subpoenas Duces Tecum, 798 F.2d 32, 34 (2d Cir. 1986), the government submits that it has presumptively met this burden by obtaining an indictment charging the defendant with obstructing justice in connection with his scheme to introduce an Altered Statement in support of a bail application. See Boyd v. City of New York, 336 F.3d 72, 76 (2d Cir. 2003) (establishing that a grand jury indictment creates a presumption of probable cause); United States v. Rodriguez, No. S1 07-CR-699 (HB), 2008 WL 52917, at *5 (S.D.N.Y. Jan. 2, 2008) (holding that "an 'indictment, 'fair upon its face,' and returned by a 'properly constituted grand jury,' conclusively determines the existence of probable cause) (quoting Gerstein v. Pugh, 420 U.S. 103, 117 n.19 (1975)).

[2] Indeed, it is likely that co-defendants might seek Feitel's testimony as well in attempting to exonerate their clients. At the very least, the co-defendants may seek to implicate Feitel in order to exonerate themselves.

counsel's review. As set forth below, Feitel's role, even if unwitting, in the defendant's scheme to obstruct justice by presenting a demonstrably altered document in support of the defendant's bail application raises serious concerns implicating the witness-advocate rule.

DISCUSSION

I. Applicable Law

    A. Overview

The Sixth Amendment affords a criminal defendant the right to effective assistance of counsel. See Wood v. Georgia, 450 U.S. 261, 271 (1981); United States v. Perez, 325 F.3d 115, 124 (2d Cir. 2003). That right, however, is not absolute and does not guarantee the defendant counsel of his own choosing. See United States v. Jones, 381 F.3d 114, 119 (2d Cir. 2004); United States v. Locascio, 6 F.3d 924, 931 (2d Cir. 1993). While there is a "presumption in favor of the [defendant's] chosen counsel, such presumption will be overcome by a showing of an actual conflict or a potentially serious conflict." Jones, 381 F.3d at 119 (citing Locascio, 6 F.3d at 931); see also Wheat v. United States, 486 U.S. 153, 164 (1988).

To determine if the defendant's counsel is burdened by a conflict of interest, a district court "must investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." United States v. Levy, 25 F.3d 146, 153 (2d Cir. 1994). An actual conflict exists "when the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action, or when the attorney's representation of the defendant is impaired by loyalty owed to a prior client." Jones, 381 F.3d at 119 (internal quotation marks and citations omitted). A potential conflict arises if "the interests of the defendant could place the attorney under inconsistent duties in the future." Id. (emphasis and citations omitted).

    1. Mandatory Disqualification

If an attorney suffers from an actual or potential conflict of such a serious nature that no rational defendant would knowingly and intelligently desire that attorney's representation, the court must disqualify that attorney. See United States v. Lussier, 71 F.3d 456, 461-62 (2d Cir. 1995). "Such per se conflicts of interest are not only unwaivable, but are of such a serious nature that if allowed to persist through trial and conviction, on appeal they result in automatic reversal without requiring a showing of prejudice." United States v. Williams, 372 F.3d 96, 103 (2d Cir. 2004). As described more fully below, the Second Circuit has recognized only two categories of conflicts that are unwaivable: where "counsel" is not admitted to the bar of any court and where counsel is implicated in the defendant's crimes.

3

### 2. Discretionary Disqualification

Regardless of the severity of the conflict or the defendant's willingness to waive the conflict, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Wheat, 486 U.S. at 160. "The question of [attorney] disqualification therefore implicates not only the Sixth Amendment right of the accused, but also the interests of the courts in preserving the integrity of the process and the government's interests in ensuring a just verdict and a fair trial." Locascio, 6 F.3d at 931. Accordingly, "a district court should decline to permit a defendant to be represented by the counsel of his choice if that representation would undermine the integrity of the judicial process." United States v. DiPietro, No. 02 CR 1237 (SWK), 2004 WL 613073, at *4 (S.D.N.Y. Mar. 29, 2004) (citing Wheat, 486 U.S. at 163).

### 3. Conflicts That May Be Waived

If a conflict is such that a rational defendant could knowingly and intelligently choose to continue to be represented by the conflicted attorney, the Court must obtain directly from the defendant a valid waiver in accordance with the procedures set forth in United States v. Curcio, 680 F.2d 881 (2d Cir. 1982). See, e.g., Malpiedi, 62 F.3d at 470; Levy, 25 F.3d at 153; United States v. Iorizzo, 786 F.2d 52, 58-59 (2d Cir. 1986). In summarizing Curcio procedures, the Second Circuit has instructed the trial court to:

> (i) advise the defendant of the dangers arising from the particular conflict; (ii) determine through questions that are likely to be answered in narrative form whether the defendant understands those risks and freely chooses to run them; and (iii) give the defendant time to digest and contemplate the risks after encouraging him or her to seek advice from independent counsel.

Iorizzo, 786 F.2d at 59; see also Curcio, 680 F.2d at 888-90. By relying on waivers of potential conflict claims, courts are spared from having to wade into the intricacies of those claims. United States v. Jiang, 140 F.3d 124, 128 (2d Cir. 1998).

Finally, the need for a Curcio hearing exists regardless of whether a case is disposed of by way of guilty plea or trial. "A claim that counsel is conflicted is in essence a claim of ineffective assistance of counsel." Stantini, 85 F.3d at 15. Likewise, "[e]ffective assistance of counsel includes counsel's informed opinion as to what pleas should be entered." Boria v. Keane, 99 F.3d 492, 497 (2d Cir. 1996). Therefore, it necessarily follows that a defendant has a right to conflict-free representation during the plea negotiation stage. See id. ("[P]rior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered.") (quoting Von Moltke v. Gillies, 332 U.S. 708, 721 (1948) (emphasis added)); see also Stantini, 85 F.3d at 16-17 (suggesting that ineffective assistance of counsel may be shown if attorney's dual

4

representation led to inadequate advice "with respect to the advantages or disadvantages of a plea").

  B. Relevant Conflict – Attorney as an Unsworn Witness

A lawyer is generally barred from acting as both an advocate and a witness in the same proceeding. Model Rules of Professional Conduct Rule 3.7(a); Ciak v. United States, 59 F.3d 296, 304-05 (2d Cir. 1995); see also Gordon Mehler, John Gleeson, David C. James & Alicyn Cooley, Federal Criminal Practice: A Second Circuit Handbook § 8-6 (18th ed. 2018).

Where, as here, the attorney is expected to testify about the source of the Altered Document and how that document was obtained and submitted to the Court, a conflict of interest exists because the defendant's attorney has evidence as to how, from whom and where he received the document where that evidence implicates the client. It is part of the proof against the defendant that he supplied the Altered Statement to Feitel or directed Feitel how to obtain it.

  C. The Defendant's Communications with Counsel Concerning the Altered Statement are not Privileged.

Where a defendant uses an attorney as an agent to perpetrate a fraud on the Court, "[i]t is well-established that communications that otherwise would be protected by the attorney-client privilege or the attorney work product privilege are not protected if they relate to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct." In re Grand Jury Subpoena Duces Tecum, 731 F.2d 1032, 1038 (2d Cir. 1984). Indeed, "advice in furtherance of such goals is socially perverse, and the client's communications seeking such advice are not worthy of protection." Id. As relevant here, "[s]uch communications are properly excluded from the scope of the privilege even if the attorney is unaware that this advice is sought in furtherance of such an improper purpose." Id.; see United States v. McDonald, No. 01-CR-1168 (JS), 2002 WL 31956106, at *4 (E.D.N.Y. May 9, 2002) (noting that, for purposes of the crime-fraud exception, "it is the client's objective in carrying out the fraud that is controlling").

The Second Circuit has made clear that agreeing, "to limit inquiry to avoid the problem of counsel as an unsworn witness may be appropriate in some circumstances." United States v. Kliti, 156 F.3d 150, 156 n.7 (2d Cir. 1998) (reversing conviction for failure to hold Curcio hearing to determine if the defendant consented to limiting cross-examination). In some circumstances, a stipulation may be used to avoid disqualification of an advocate-witness. Torres v. Donnelly, 554 F.3d 322, 326 (2d Cir. 2009) (conflict negated by stipulation that obviated need for defense counsel's testimony).

Moreover, where defense counsel is so entangled in the facts of the defendant's case such that he/she is either a witness or would, upon remaining as defense counsel, "become an unsworn witness for the accused," it is counsel's ethical duty to withdraw, and upon failing to do so, counsel should be disqualified, regardless of the

5

defendant's expressed willingness to waive.  Locascio, 6 F.3d at 931-34.  Because the government, not the defendant, is prejudiced, "waiver . . . by the defendant is ineffective in curing the impropriety in such situations."  Id. at 931, 934; see also United States v. Liszewski, No. 06 CR 130 (NGG), 2006 WL 2376382, at *3 (E.D.N.Y. Aug. 16, 2006).

## ANALYSIS

Based on the facts set forth above, the government respectfully submits that a Curcio inquiry, including the appointment of Curcio counsel, is warranted to determine the nature and scope of any potential conflicts of interest and whether Feitel can remain as defendant's counsel in this case.

In particular, the government intends to call Feitel as a witness concerning his communications involving the Altered Statement. The government respectfully submits that the Court should consider the extent to which Feitel has a conflict of interest that may implicate the witness-advocate rule, discussed above.  Moreover, the Court should also consider Feitel's inherent conflict created by remaining in the case, as cross-examining any government witness about the defendant's obstruction will involve testimony relating to information or conversations to which Feitel would have first hand information.

Although the government does not contend that Feitel knowingly perpetuated any falsehoods to the Court, because he was involved in the filing of the Altered Statement with the Court and has relevant communications with the defendant and likely others, the defendant may, post-trial, seek to blame Feitel for the defendant's own obstruction. Such a scenario would place Feitel in a position adverse to his client.

The government contends that the Court may, after an appropriate inquiry, find it necessary to disqualify Feitel to preserve the integrity of the process, even if this is not a per se conflict.  At a minimum, his role raises serious concerns that require a Curcio hearing prior to trial and the Crime-Fraud exception opens Counsel's otherwise privileged communications with his client to examination.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court conduct the appropriate Curcio inquiry, including the appointment of Curcio counsel to advise the defendant regarding Feitel's potential conflicts of interest, and make a determination whether a waiver by the defendant or disqualification of counsel best protects the defendant's right to conflict-free representation.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By: _____/s/_____
Charles P. Kelly
Burton T. Ryan, Jr.
Assistant U.S. Attorneys
(631) 715-7866

cc:   Robert Feitel, Esq. (by Email and ECF)
      Kevin Keating, Esq. (by Email and ECF)